IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| SEAN COLLINS,<br><br>Plaintiff,<br><br>vs.<br><br>SCOTT FRAKES, Director Nebraska Correctional Department Services - Individual and Official Capacity; ROBERT MADSEN, Warden (Nebraska State Penitentory) - Individual and Official Capacity; M. MARTINEZ, Mental Health Practitioner (Nebraska State Penitentory) - Individual and Official Capacity; J. CONROY, Unit 4 Manager (Nebraska State Penitentory) - Individual and Official Capacity; M. JOHNSON, Case Manager (H66 PC) Housing Unit 4 in Protect Custody - Individual and Official Capacity; D. PELOWSKI, Case Manager (Housing Unit 6 Protective Custody) - Individual and Official Capacity; M. RODRIGUEZ, Case Worker (Housing Unit 4 Protective Custody) - Individual and Official Capacity; C. MORSE, Corporal (D Gallery assigned rotation for Protective Custody) - Individual and Official Capacity; and M. REISDORFF, Sergeant (Assigned in Housing Unit 4) - Individual and Official Capacity;<br><br>Defendants. | 8:18CV270<br><br>**MEMORANDUM<br>AND ORDER** |

Plaintiff, a prisoner in the custody of the Nebraska Department of Correctional Services ("NDCS"), filed a Complaint on June 15, 2018.[*] (Filing No. 1.) He has been given leave to proceed in forma pauperis. (Filing No. 6.) The court now conducts an initial review of Plaintiff's Complaint (filing no. 1) to determine whether summary dismissal is appropriate under 28 U.S.C. §§ 1915(e) and 1915A. As part of its initial review, the court will also consider Plaintiff's Motion to Amend Complaint. (Filing No. 17.)[1]

## I. SUMMARY OF COMPLAINT

Plaintiff is a prisoner at Tecumseh State Correctional Institution. He was previously confined at the Nebraska State Penitentiary ("NSP"). Plaintiff filed this Complaint against Scott Frakes, Director of NDCS; Robert Madsen, Warden of NSP; M. Martinez, Mental Health Practitioner at NSP; J. Conroy, Unit 4 Manager at NSP; M. Johnson, Case Manager (H66 PC) Housing Unit 4 Protective Custody; D. Pelowski, Case Manager (Housing Unit 6 Protective Custody); M. Rodriguez, Case Worker (Housing Unit 4 Protective Custody); C. Morse, Corporal (D Gallery assigned rotation for Protective Custody); and M. Reisdorff, Sergeant (Assigned in Housing Unit 4). (Filing No. 1 at CM/ECF pp. 2-3, 8.) Plaintiff sues Defendants in both their individual and official capacities. (*Id.*) Plaintiff claims that he has been subjected to gross negligence, cruel and unusual punishment, unconstitutional conditions of confinement, breach of confidentiality, and fraud as a prisoner in protective custody at NSP. (*Id.* at CM/ECF p. 3.)

Plaintiff alleges that from March 19, 2018 through May 18, 2018, he was "emotionally and mentally abused, violated, and neglected on a daily basis" as a prisoner in protective custody at NSP.[2] (*Id.* at CM/ECF p. 4.) He further claims that he has "suffered through a series of traumatizing events on a daily basis for nearly three months, ever since needing and requesting protective custody." (*Id.* at CM/ECF

---

[*] Due to technical issues caused by the length of the footnotes in this Memorandum and Order, endnotes are used instead of footnotes.

p. 5.) He complains that he filed several emergency grievances, "grievances of [a] sensitive nature," and "informal step one grievances," ninety-percent of which "did not get returned or logged correctly." (*Id.* at CM/ECF p. 4.) Plaintiff asserts that he has "attempted on several occasions to speak with mental health" and has been "deprived privacy and confidentiality" at NSP, and that he "wrote grievances on the matter that still have not been returned." (*Id.* at CM/ECF p. 5.) Plaintiff states:

> I am completely traumatized and unsure how to properly express it. I feel I can't trust authority now. The abuse and neglect I was put through was catastrophic especially after telling authority I was nearly stabbed and raped and needed protective custody. They neglected my investigation for 8 weeks. I didn't receive hot foods. I received possible poisoned pudding (which was grieved). I had no safe access to medical so if I were to be physically injured I could die. No clean clothes when I showered. Unable to clean cell. Cell door was unsecured randomly multiple times a day sometimes.

(*Id.* at CM/ECF p. 12.)

As a result of the alleged abuse and neglect, Plaintiff claims he is "emotionally and mentally scarred" and "broken" and suffering from post-traumatic stress disorder. (*Id.* at CM/ECF pp. 5, 13.) He alleges that he has been "deprived of even being seen by mental health to discuss issues to attempt coping strategies or grieving" but, in any event, he does "not think it would be safe to trust them and to confide in them." (*Id.* at CM/ECF pp. 5, 13.) As relief, Plaintiff seeks $100,000 from each Defendant for the "corruption," "neglect," "abuse," and "constant" civil rights violations "[he has] endured." (*Id.* at CM/ECF p. 5.)

## II. SUMMARY OF MOTION TO AMEND COMPLAINT

Pursuant to NECivR 15.1(b), Plaintiff's Motion to Amend Complaint (filing No. 17) is granted to the extent that the court will consider the additional allegations

3

in the Motion to Amend Complaint and the documents attached as supplemental to Plaintiff's Complaint (filing no. 1).

In the supplement (filing no. 17), Plaintiff seeks to: (1) dismiss Defendants Johnson, Rodriguez, Pelowski, Martinez, Reisdorff, and Morse from the case "due to insufficient evidence"; (2) name NDCS as an additional Defendant; and (3) update Defendant Madsen's job title from NSP Warden to "Deputy Director of NDCS." The court, therefore, will dismiss Defendants Johnson, Rodriguez, Pelowski, Martinez, Reisdorff, and Morse from this action without prejudice.[3] The court will direct the clerk's office to remove those Defendants from this action and update Madsen's job title from NSP Warden to "Deputy Director of Nebraska Department of Correctional Services."[4]

The supplement focuses solely on NDCS's grievance procedure—namely, the improper processing and handling of prisoner grievances, which, he claims, violates the First Amendment and Nebraska law. Plaintiff alleges that the "current [grievance] process NDCS has established is easily manipulated, abused, and completely unsecure for inmates to depend on officials being properly trained and honest with this process inmates are entitled to under the law." (*Id.* at CM/ECF p. 1.) He argues that NDCS interferes with and hinders the processing of prison grievances. (*Id.* at CM/ECF pp. 2-3.) Plaintiff states that "grievances are being piled up before getting answered, and officials are not obeying time limits." (*Id.* at CM/ECF p. 2.) In sum, Plaintiff alleges:

> Grievances are the only way inmates have as a resource to express any concerns, wrongdoings, and mistreatment to facilitate a problem. But . . . this paper grievance procedure NDCS has is easily abused and neglected by officials. For example, changed dates, not following time limits, attaching little memos instead of answering, or letting grievances pile up, and even simply discarding grievances into the trash. Something needs to be changed. At least if grievances could be filed at the kiosk, dates and times could be digitally recorded and no accidentally lost grievances could happen. It would be more difficult

> for officials to manipulate and abuse [the grievance procedure] if there was an electronic grievance system. Since there is NOT, 90% of the wrongdoing is swept under the rug. Or grievances are without merit for civil actions in the courts due to the "exhaustion rule" from officials' manipulations and negligence actions.

(*Id.* (emphasis in original).)

Plaintiff claims that he has suffered "reparable injury" and "personal injury," and he seeks: (1) a judgment that he has "properly attempted to exhaust the grievance process"; (2) a judgment "overrul[ing] grievance bodies' procedural rulings" because the "officials" are "obviously incapable" of "obey[ing] the process"; (3) an order directing NDCS to change "from the current paper grievance process to an electronic grievance process done on kiosks or . . . tablets to prevent any further negligent, manipulative, or deprived acts to inmates in the future"; and (4) money damages, expenses, and court costs in the amount of $1,102,000 from Defendants in their individual capacities. (*Id.* at CM/ECF pp. 2, 4.)

### III. APPLICABLE LEGAL STANDARDS ON INITIAL REVIEW

The court is required to review prisoner and in forma pauperis complaints seeking relief against a governmental entity or an officer or employee of a governmental entity to determine whether summary dismissal is appropriate. *See* 28 U.S.C. §§ 1915(e) and 1915A. The court must dismiss a complaint or any portion of it that states a frivolous or malicious claim, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); 28 U.S.C. § 1915A(b).

Pro se plaintiffs must set forth enough factual allegations to "nudge[ ] their claims across the line from conceivable to plausible," or "their complaint must be dismissed." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569-70 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when

5

the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

"The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party 'fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved.'" *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (quoting *Hopkins v. Saunders*, 199 F.3d 968, 973 (8th Cir. 1999)). However, "[a] pro se complaint must be liberally construed, and pro se litigants are held to a lesser pleading standard than other parties." *Topchian*, 760 F.3d at 849 (internal quotation marks and citations omitted).

Liberally construed, Plaintiff here alleges federal constitutional claims. To state a claim under 42 U.S.C. § 1983, a plaintiff must allege a violation of rights protected by the United States Constitution or created by federal statute and also must show that the alleged deprivation was caused by conduct of a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993).

## IV. DISCUSSION

Based on the Complaint and the supplement, the court understands that Plaintiff wishes to proceed against NDCS, Frakes (the Director of NDCS), Madsen (the Deputy Director of NDCS/former Warden of NSP), and Conroy (an NSP unit manager) in their official and individual capacities. The first issue is whether Defendants are immune from suit under the Eleventh Amendment.

**A. Sovereign Immunity**

The Eleventh Amendment bars claims for damages by private parties against a state, state instrumentalities, and an employee of a state sued in the employee's official capacity. *See, e.g.*, *Egerdahl v. Hibbing Cmty. Coll.*, 72 F.3d 615, 619 (8th

Cir. 1995); *Dover Elevator Co. v. Arkansas State Univ.*, 64 F.3d 442, 446-47 (8th Cir. 1995). Any award of retroactive monetary relief payable by the state, including for back pay or damages, is proscribed by the Eleventh Amendment absent a waiver of immunity by the state or an override of immunity by Congress. *See, e.g.*, *Egerdahl*, 72 F.3d at 619; *Dover Elevator Co.*, 64 F.3d at 446-47; *Nevels v. Hanlon*, 656 F.2d 372, 377-78 (8th Cir. 1981). Moreover, a suit may be brought under § 1983 only against a "person" who acted under color of state law. A state is not a "person" as that term is used in 42 U.S.C. § 1983, and is not suable under the statute. *Hilton v. S. Carolina Pub. Rys. Comm'n*, 502 U.S. 197, 200-01 (1991). Accordingly, § 1983 does not create a cause of action against NDCS, and the Eleventh Amendment bars Plaintiff's requests for monetary damages against the remaining Defendants (Frakes, Madsen, and Conroy) in their official capacities. These claims for relief shall be dismissed.

Sovereign immunity, however, does not bar damages claims against Frakes, Madsen, and Conroy acting in their individual capacities, nor does it bar claims brought pursuant to 42 U.S.C. §1983 that seek prospective injunctive relief from these Defendants acting in their official capacity. *Verizon Md. Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) ("In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." (internal quotation and citation omitted)); *Gibson v. Arkansas Dep't of Corr.*, 265 F.3d 718, 720-21 (8th Cir. 2001).

Therefore, the only remaining Defendants in this action are Frakes, Madsen, and Conroy. The allegations in the Complaint and supplement pertaining to these Defendants are as follows:

Conroy, as an NSP unit manager, did not address Plaintiff's "concerns properly." Plaintiff claims that "grievances disappeared, were not logged and numbered correctly"; that "blue step one grievances weren't handed into the warden

or designee"; and that Conroy "didn't respond to numerous kites addressed to him," "[d]idn't take proper actions in [Plaintiff's] investigation," and "lost grievances." (Filing No. 1 at CM/ECF pp. 9, 11.)

Madsen "failed to document . . . serious risk and events," after Plaintiff wrote "countless interview requests" and filed step one and emergency grievances. (Filing No. 1 at CM/ECF pp. 9, 11.) In the supplement, Plaintiff asserts that Madsen, as Deputy Director of NDCS, is now allowed to answer step two grievance appeals, and therefore, there is a conflict of interest "since this Complaint is mostly on the improper filing of the grievance procedures." (Filing No. 17 at CM/ECF p. 1.)

Frakes, as Director of NDCS, "failed to properly maintain control . . . of internal management administration and staff in charge of [NSP]." (Filing No. 1 at CM/ECF pp. 9, 11.) Plaintiff claims that the lack of properly trained correctional staff resulted in the disregard of "countless faults and failures" regarding protective custody inmates at NSP. (Filing No. 1 at CM/ECF pp. 9, 11.)

## B. Grievance Procedure

As stated above, Plaintiff's Complaint (filing no. 1) and supplement (filing no. 17) largely concern allegations that NDCS's grievance procedures violate the First Amendment and Nebraska law and that the individual Defendants improperly handled or processed his grievances.

Although the lack of a meaningful grievance procedure might excuse the need to exhaust administrative remedies, *see Ross v. Blake*, 136 S. Ct. 1850, 1855 (2016) ("A prisoner need not exhaust remedies if they are not 'available.'"), it does not provide a cause of action under § 1983. *See Merryfield v. Jordan*, 431 F. App'x 743, 749 (10th Cir. 2011) (holding that civilly committed sex offender lacked any federal constitutional right to an adequate grievance procedure); *see also Lomholt v. Holder*, 287 F.3d 683, 684 (8th Cir. 2002) (holding that allegations regarding actions of prison officials in handling prisoner's grievances and regulating access to his

attorney were insufficient to state a constitutional claim); *Buckley*, 997 F.2d at 495 (holding that inmates have no "liberty interest" in the processing of their grievances, such as would support § 1983 claim for prison official's failure to pick up his completed grievance forms); *Nelson v. Hjorth*, No. 8:18CV88, 2018 WL 2050571, at **5, 9 (D. Neb. May 2, 2018) (lack of an effective grievance procedure does not establish a § 1983 cause of action); *Dvorak v. Nebraska*, No. 8:17CV467, 2018 WL 1400425, at *3 (D. Neb. Mar. 20, 2018) ("To the extent Plaintiff intends to base a § 1983 claim on his allegation that unnamed defendants failed to respond to his grievances and complaints in a timely fashion, such allegations do not constitute a violation of Plaintiff's constitutional rights.").

Accordingly, Plaintiff's allegations related to the processing and handling of grievances fail to state a § 1983 claim.

**C. Eighth Amendment Claims**

Liberally construed, Plaintiff attempts to allege Eighth Amendment claims (i.e., conditions of confinement,[5] deliberate indifference-serious medical need,[6] failure to protect,[7] and/or cruel and unusual punishment[8]). Plaintiff's allegations are vague and lacking in specifics, such as dates and persons involved. Indeed, Plaintiff has not alleged that Frakes, Madsen, and Conroy directly participated in the alleged unconstitutional violations. *See Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990) ("Liability under § 1983 requires a causal link to, and direct responsibility for, the deprivation of rights." (citation omitted)). Even under the most liberal pleading standards, the Complaint and supplement fail to give the court an idea what acts Frakes, Madsen, and Conroy are accused of that could result in liability under the Eighth Amendment. More is needed.

To the extent Plaintiff alleges that Frakes and Madsen are liable under the Eighth Amendment based on their responsibility for the overall operation of the NDCS prison system or that Madsen is liable based on his past responsibility as the Warden of NSP, his claims fail because respondeat superior is not a basis for liability

9

under 42 U.S.C. § 1983. *Keeper v. King*, 130 F.3d 1309, 1314 (8th Cir. 1997) (finding that general responsibility for supervising operations of prison is insufficient to establish personal involvement required to support liability). "Supervisors can, however, 'incur liability . . . for their personal involvement in a constitutional violation, or when corrective inaction amounts to deliberate indifference to or tacit authorization of violative practices.'" *Langford v. Norris*, 614 F.3d 445, 460 (2010) (internal quotations omitted). Plaintiff has made no such allegations here.

On the court's own motion, Plaintiff shall have 30 days from the date of this Memorandum and Order to file an amended complaint that sufficiently describes his Eighth Amendment claims against Defendants Frakes, Madsen, and Conroy. Plaintiff should be mindful to clearly explain what Defendants did to him, when Defendants did it, how Defendants' actions harmed him, and what specific legal rights Plaintiff believes Defendants violated. If Plaintiff fails to file an amended complaint in accordance with this Memorandum and Order, his claims against Defendants will be dismissed without prejudice and without further notice. The court reserves the right to conduct further review of Plaintiff's claims pursuant to 28 U.S.C. §§ 1915(e) and 1915A after he addresses the matters set forth in this Memorandum and Order.

**D. State Law Claims**

Liberally construing the Complaint and supplement, Plaintiff may have claims for violations of state law. Pending amendment, as set forth in this Memorandum and Order, the court may choose to exercise supplemental jurisdiction over such claims pursuant to 28 U.S.C. § 1367.

IT IS THEREFORE ORDERED that:

1.     Plaintiff's Motion to Amend Complaint (filing no. 17) is granted to the extent that the court will consider the additional allegations in the Motion to Amend

Complaint and the documents attached as supplemental to Plaintiff's Complaint ([filing no. 1](#)).

2. Plaintiff shall have until **March 8, 2019**, to file an amended complaint in accordance with this Memorandum and Order. Failure to file an amended complaint within the time specified by the court will result in the court dismissing this case without further notice to Plaintiff.

3. Plaintiff is ordered not to file any document aside from the amended complaint without first obtaining leave of the court.

4. Defendants Johnson, Rodriguez, Pelowski, Martinez, Reisdorff, and Morse are dismissed from this action without prejudice. The clerk's office is directed to remove these Defendants from this action.

5. The clerk's office is directed to update the Docket Sheet to reflect that the correct name of "Nebraska Correctional Department Services" is "Nebraska Department of Correctional Services."

6. The clerk's office is directed to update the Docket Sheet to reflect that Defendant Madsen's job title is "Deputy Director of Nebraska Department of Correctional Services," not Warden of Nebraska State Penitentiary.

7. The clerk's office is directed to update the Docket Sheet to reflect that the correct spelling of "Penitentory" is "Penitentiary."

8. The clerk of the court is directed to set a pro se case management deadline using the following text: **March 8, 2019**: check for amended complaint.

Dated this 6th day of February, 2019.

BY THE COURT:

s/ *Richard G. Kopf*
Senior United States District Judge

# ENDNOTES

1. Plaintiff filed the certificate of service for the Motion to Amend Complaint in a supplement filing. ([Filing No. 18](#).)

2. Spelling, punctuation, and capitalization have been corrected throughout this Memorandum and Order.

3. As such, the allegations in the Complaint concerning these Defendants will not be discussed.

4. The court will not add NDCS as a Defendant, however, for the reasons discussed in Section IV(A).

5. The Eighth Amendment's prohibition against "cruel and unusual punishments" requires that prison officials provide humane conditions of confinement. "Prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)). The Constitution "does not mandate comfortable prisons" or that prisons be "free of discomfort." *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). A prisoner asserting a conditions of confinement claim must identify the "deprivation of a single, identifiable human need such as food, warmth, or exercise," and "the risk that the prisoner complains of [must] be so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk." *Helling v. McKinney*, 509 U.S. 25, 36 (1993); *Wilson v. Sieter*, 501 U.S. 294, 304 (1991). A conditions of confinement claim based on prison conditions requires a showing of: (1) a deprivation of "minimal civilized measure of life's necessities," and (2) deliberate indifference by prison officials to those basic needs. *Rhodes*, 452 U.S. at 347; *Wilson*, 501 U.S. at 304.

6. To prevail on a deliberate indifference to a serious medical need claim, a prisoner must show: (1) he suffered from an objectively serious medical need, and (2) the defendant knew of the need yet deliberately disregarded it. *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000). "A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Schaub v. VonWald*, 638 F.3d 905, 914 (8th Cir. 2011) (internal quotations and citations omitted).

7.	In order to prevail on an Eighth Amendment failure-to-protect claim, an inmate must make two showings. First, the inmate must demonstrate that he or she is "incarcerated under conditions posing a substantial risk of serious harm." *Jensen v. Clarke*, 73 F.3d 808, 810 (8th Cir.1996) (citing *Farmer*, 511 U.S. 825) (other citations omitted). The second requirement concerns the state of mind of the prison official who is being sued. *Id.* It mandates that the inmate show that the official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and the official must also draw the inference." *Id.* This subjective requirement is necessary because "only the unnecessary and wanton infliction of pain implicates the Eighth Amendment." *Id.*

8.	To establish a violation of the Eighth Amendment's cruel and unusual punishments clause, a prisoner must show that officials were "knowingly and unreasonably disregarding an objectively intolerable risk of harm" to the prisoners' health and safety. *Farmer*, 511 U.S. at 846.